**Plaintiffs' Reply Deadline: April 19, 2019**
**Hearing Date: To Be Determined**

Eileen T. McCabe, Esq.
R. James Bradford, Esq.
Jaimie H. Ginzberg, Esq.
Glenn Greenberg, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY  10019
Telephone: (212) 261-8000
Facsimile: (212) 261-8750
eileen.mccabe@mendes.com
james.bradford@mendes.com
jaimie.ginzberg@mendes.com
glenn.greenberg@mendes.com
*Attorneys for the Defendant National Union Fire Insurance Company*
*of Pittsburgh, PA*

David Christian, Esq. *(pro hac vice)*
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, IL 60602
312-273-1807
dchristian@dca.law

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RAPID-AMERICAN CORPORATION,<br><br>Debtor. | Chapter 11<br>Case No. 13-10687-smb |
| RAPID-AMERICAN CORPORATION,<br>THE OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS, and LAWRENCE FITZPATRICK,<br>THE FUTURE CLAIMANTS' REPRESENTATIVE,<br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY<br>COMPANY, ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, AND NATIONAL<br>UNION FIRE INSURANCE COMPANY OF<br>PITTSBURGH, PA,<br><br>Defendants. | Adversary Proceeding No.<br>15-01095 |

<u>**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S**</u>
<u>**MEMORANDUM IN OPPOSITION TO ADVERSARY PROCEEDING PLAINTIFFS'**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT ON ALLOCATION**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT ................................................................................................................... 5

I.   Plaintiffs' Motion Regarding the 1977-79 Policy Should Be Denied Because
     Plaintiffs Have Not Proven that any Non-Cumulation Clause Is Incorporated into
     that Policy. .......................................................................................................... 5

II.  Even If Plaintiffs Were Able To Prove That The 1977-79 Policy Contains A Non-
     Cumulation Clause, There Are Genuine Disputes of Material Fact, Still Subject
     To Ongoing Discovery, That Prohibit Summary Judgment In Plaintiffs' Favor ........ 7

III. Plaintiffs' Motion as to The 1984-85 Policy Fails as a Matter of Law. ........... 13

     A.    The 1984-1985 Policy Does Not Contain any Non-Cumulation Provision. ........ 13

     B.    The "Other Insurance" Clause is Not a Non-Cumulation Clause ........................ 14

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Consol. Edison v. Allstate Ins. Co.,*
    98 N.Y.2d 208, 746 N.Y.S.2d 622 (2002) ................................................................7, 13, 15

*Continental Casualty Company v. Employers Insurance Company,*
    60 A.D.3d 128 (1st Dep't 2008), *leave to app. denied*, 13 N.Y.3d 710,
    890 N.Y.S.2d 447 (2009) ..........................................................................................10

*Contractors Realty Co. v. Ins. Co. of N. Am.,*
    469 F. Supp. 1287 (S.D.N.Y. 1979) ........................................................................8

*E.I. du Pont Nemours & Co v. Stonewall Ins. Co.,*
    No. 99C-12-253 JTV, 2008 WL 7020668 (Del. Super. Ct. Aug 14, 2008)......................12

*Hiraldo v. Allstate Ins. Co.,*
    5 N.Y.3d 508 (2005) ................................................................................................11

*Hopeman Brothers, Inc. v. Continental Cas. Co., et al.,*
    307 F. Supp. 3d 433, * (E.D. Va. 2018) ..................................................................12

*In Re Viking Pump, Inc..,*
    27 N.Y.3d 244 (2016) ......................................................................................*passim*

*Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.,*
    No. 13-CV-4784, 2017 WL 4351523 (S.D.N.Y. Sept. 9, 2017) ................................14, 16

*Nesmith v. Allstate Ins. Co.,*
    103 A.D.3d 190 (4th Dep't 2014) ............................................................................11

*Netherlands Ins. Co. v. United Specialty Ins. Co.,*
    276 F. Supp. 3d 94 (S.D.N.Y. 2017) ........................................................................4

*New England Insulation Co. v. Liberty Mut. Ins. Co.,*
    83 Mass. App. Ct. 631 (2013) ..................................................................................16

*Olin Corp. v. OneBeacon Am. Ins. Co.,*
    864 F.3d 130 (2d Cir. 2017) ....................................................................................12

*Pac. Employers Ins. Co.*,
    No. 1:11-CV-912, 2014 WL 2805312 (N.D.N.Y. June 20, 2014) ....................................9

*Roman Catholic Diocese v. Nat'l Union Fire Ins. Co.*,
    21 N.Y.3d 139, 969 N.Y.S.2d 808 (2013)....................................................................7, 13

*Sood v. Rampersaud*,
    2013 WL 1681261 (S.D.N.Y. Apr. 17, 2013) .....................................................9

*State of N.Y. v. Union Fork & Hoe Co.*,
    No. 90-CV-688, 1992 WL 107363 (N.D.N.Y. May 8, 1992) .............................................4

*Travelers Ins. Co. v. Buffalo Reinsurance Co.*,
    1990 WL 116741 (S.D.N.Y. Aug. 7, 1990)........................................................................4

**Rules**

FED. R. CIV. P. 56(a) ..................................................................................................................4

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") hereby opposes the Motion for Partial Summary Judgment on Allocation by Plaintiffs Rapid American Corporation ("Rapid"), the Official Committee of Unsecured Creditors (the "Committee"), and Future Claimants' Representative Lawrence Fitzpatrick (the "FCR") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' motion is based on an erroneous view of *In Re Viking Pump, Inc.* 27 N.Y.3d 244 (2016) ("*Viking Pump*"). In that decision, the New York Court of Appeals stressed it resolved *Viking Pump* based on the facts of that case and reaffirmed the principle under New York law that the actual "contract language of the applicable insurance policies controls . . . ." *Id.* at 250.

It follows that Plaintiffs' motion for partial summary judgment regarding allocation with respect to the 1977-79 National Union Policy (Policy No. 1229343) (the "1977-79 Policy") fails because it is predicated on a very live factual dispute concerning whether that policy incorporates two distinct non-cumulation provisions[1], if it incorporates any at all. Plaintiffs have not proven that the 1977-79 Policy contains any non-cumulation clause they contend supports an "all sums" allocation under *Viking Pump,* and as this is an open question of highly material fact subject to ongoing discovery, Plaintiffs' request for summary judgment with respect to that policy must be denied.

---

[1] Plaintiffs contend that the 1977-79 Policy contains a provision captioned "Prior Insurance and Noncumulation of Liability" and another captioned "Noncumulation of Liability – Same Occurrence." For purposes of this Motion, National Union will refer to both of these provisions as non-cumulation clauses.

Moreover, even if the 1977-79 Policy is later found to have incorporated either or both of the non-cumulation clauses that Plaintiffs allege it did, their motion overlooks the fact that Rapid has not established there is any National Union coverage at all for Rapid and there is significant outstanding discovery relevant to whether either National Union insurance policy provides coverage for the asbestos claims in the first instance, and thus it is not ripe whether any non-cumulation clause is implicated to allocate or affect coverage amounts. Unlike in *Viking Pump*, where the Court of Appeals was not tasked with addressing threshold coverage issues that bear on the applicability of the non-cumulation clauses themselves, those issues have not yet been decided in this case and there are material facts in dispute as to same (which also remain subject to ongoing discovery).

With respect to the 1984-85 National Union Policy (Policy No. 9608477) (the "1984-85 Policy"), Plaintiffs' motion likewise must be denied as the 1984-1985 Policy does not contain any non-cumulation clause. To evade this reality, Plaintiffs attempt to rely on an entirely distinct "other insurance" provision to support their application for an "all sums" allocation ruling with respect to the 1984-85 Policy. However, Plaintiffs do not cite any New York law to support their position, because there is none, and Plaintiffs ignore the fact that *Viking Pump* required a supporting non-cumulation clause be in a policy to allow for "all sums" allocation. Accordingly, Plaintiffs' motion must be denied and National Union is entitled to a ruling that the 1984-85 Policy is not subject to "all sums" allocation.

## FACTUAL BACKGROUND

Rapid once owned The Philip Carey Manufacturing Company ("Philip Carey"). Plaintiffs' Mem. of Law in Support of Their Motion for Partial Summary Judgment on Allocation ("Mem.") at 3. Philip Carey manufactured and sold asbestos-containing products. *Id.*

2

Rapid has been held liable for certain of Philip Carey's asbestos-related liabilities. *Id.* According to Rapid's First Day Filings, it has incurred successor liability for asbestos-related claims arising from plaintiffs' alleged exposure to asbestos-containing products sold by the Philip Carey Manufacturing Company as that entity existed prior to June 1, 1967. Those underlying asbestos claims are purportedly the sole basis for Rapid's asbestos-related liabilities. *See* Dec. of Paul Weiner Pursuant to Rule 1007-2 of the Local Rules for the Southern District of New York in Support of Chapter 11 Petition and First Day Pleadings, *In Re Rapid-American Corp.,* 13-10687, Doc. 3 at p.3, ¶ 7.

National Union issued two high level excess insurance policies in favor of Rapid. *See* Ex. A and Ex. B to Affirmation of Paul E. Breene in Support of Plaintiffs' Motion for Partial Summary Judgment on Allocation ("Breene Affirmation"). The National Union policies specify that they follow the form (i.e., incorporate certain terms) of specified underlying insurance policies. *Id.* The 1977-79 Policy incorporates certain terms, conditions, and exclusions contained in an underlying 1977 Northbrook insurance policy (which incepted some months before the 1977-79 Policy (*see* Ex. A to Breene Affirmation); it is National Union's position that this policy does not contain a non-cumulation provision. The parties dispute whether the 1977-79 Policy also somehow follows form to a later-incepting underlying 1978 Northbrook Policy (that may or may not have any non-cumulation clause). *See also* Mem. at 5, n.4. The 1984-85 National Union Policy incorporates certain terms, conditions, and exclusions contained in underlying New England Insurance Co. Policy No. NA000001. *See* Ex. B to Breene Affirmation. That Policy indisputably does not contain a non-cumulation clause. *See id.*

In 2013, Rapid filed for Chapter 11 bankruptcy protection. Two years later, Plaintiffs sued National Union seeking coverage under the two high-level National Union policies. *See*

3

Mem. at 4. The National Union policies have not been found to provide any coverage for a single underlying asbestos claim.

## LEGAL STANDARD

Summary judgment is only appropriate if there is no genuine dispute as to any material fact. FED. R. CIV. P. 56(a). "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' The relevant inquiry on application for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 104 (S.D.N.Y. 2017) (citations omitted). "In evaluating the record to determine whether there is a genuine issue as to any material fact, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* at 105.

Courts cannot grant summary judgment when the terms, conditions, and exclusions of a policy are in dispute because these are material facts. *See e.g.*, *State of N.Y. v. Union Fork & Hoe Co.*, No. 90-CV-688, 1992 WL 107363, at *3 (N.D.N.Y. May 8, 1992) ("At the risk of stating the obvious, the court notes at the outset that [movant] cannot recover in an action to enforce the terms of an insurance policy without first proving the existence, execution, delivery, and contents of a governing policy."); *see also Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 1990 WL 116741, at *3 (S.D.N.Y. Aug. 7, 1990) ("In an action on an insurance contract, 'summary judgment is perforce improper unless the terms of the agreement are 'wholly unambiguous.").

## ARGUMENT

I.    **Plaintiffs' Motion Regarding the 1977-79 Policy Should Be Denied Because Plaintiffs Have Not Proven that any Non-Cumulation Clause Is Incorporated into that Policy.**

Even Plaintiffs admit in their motion that the parties do not agree as to whether the 1978 Northbrook Policy's terms were incorporated into the 1977-79 Policy: "National Union has asserted in previous briefing that the 1977-79 [] Policy is controlled exclusively by [the 1977] Northbrook policy…, not [the 1978 Northbrook] policy…Rapid disagrees with National Union's position…." Plaintiffs' Mem. of Law in Support of Their Motion for Summary Judgment on the Right to Allocate Insurance Coverage Settlement Funds at 7, n.7; *see also* Mem. at 5, n.4. Thus, Plaintiffs themselves admit there is a dispute as to whether the 1977-79 Policy incorporates the non-cumulation provisions in the purported 1978 Northbrook policy. This alone mandates denial of Plaintiffs' motion for summary judgment as to the 1977-79 National Union policy.

Moreover, Plaintiffs' position that the National Union policy incepting in 1977 follows form to a Northbrook policy incepting in 1978 is both illogical and practically impossible, as National Union could not possibly agree to follow form to a 1978 policy that was not in existence at the time its own policy incepted, and there is no evidence whatsoever (or even a contention) that the 1977-79 Policy was modified by a later endorsement to follow form to the later Northbrook policy.[2]    Therefore, for this separate reason, the terms incorporated into the 1977-79 Policy, particularly any non-cumulation provisions, are in dispute (although Plaintiffs stretch to assert they have a factual leg to stand on).

---

[2] The 1977-79 National Union Policy came into effect on October 31, 1977. The 1977 Northbrook policy came into effect on January 1, 1977. The 1978 Northbrook Policy did not come into effect until January 1, 1978.

Plaintiffs try to avoid their problem by stating that "Rapid's copy of the [1977 Northbrook] policy, however, does include non-cumulation language (the same language as the 1978 Northbrook policy)." Mem. at 5. This is not true. The Policy that Paul E. Breene, Rapid-American Corporation's attorney, affirmed is a true and correct copy of the 1977 Northbrook Policy *does not in fact contain any non-cumulation clause*. *See* Ex. C to Breene Affirmation. A false factual assertion does not render a triable issue of fact moot.

While Plaintiffs present the Court with a copy of the 1977 Northbrook Policy with no non-cumulation clause, they then go on to state in their Statement of Undisputed Facts (which are in fact disputed) that: "The Northbrook Policies below the 1977-79 National Union Policy contain two separate non-cumulation provisions, which are incorporated into the 1977-79 National Union Policy. *See* Northbrook Policies, Breene. Aff., Exs. C [the 1977 Northbrook Policy] and D [the 1978 Northbrook Policy]." Plaintiffs SOMF ¶ 9 (bracketed sections added). Thus, Plaintiffs' attach a 1977 Northbrook policy which does not contain a non-cumulation clause as well as a 1978 purported Northbrook policy that does. The only way that Plaintiffs could assert that the 1977-79 Policy contains any non-cumulation clause or clauses is by citing to both the purported 1977 and 1978 Northbrook Policies, but there is no evidence that the 1977-79 Policy follows form to the latter. Plaintiffs have not even attempted to meet their burden of showing that the 1977 Northbrook Policy, the only policy that could conceivably be incorporated into the 1977-79 Policy, contains a non-cumulation clause.

In addition, Plaintiffs have done nothing to meet their burden to show that the exhibit that Mr. Breene affirmed was a true and correct copy of the 1978 Northbrook Policy is in fact the 1978 Northbrook Policy. The first 9 pages of Exhibit D to the Breene Affirmation have a policy form number of "RU28-1." Ex. D at 10 to Breene Affirmation (bottom left corner). Nowhere in

6

those pages does it state the policy number. The policy number does not appear until page 11; that page has a reference to policy form number "RU29-1," with a line referencing the policy number as "63 003-826." Ex. D at 11. Mr. Breene did not state on what basis he was able to affirm that Exhibit D is a true and correct copy of the 1978 insurance policy issued by Northbrook to Rapid.

National Union has started but not yet finished its depositions of Rapid, including discovery as to how it determined what constituted the 1977 and 1978 Northbrook Policies. National Union has noticed the 30(b)(6) deposition on the non-cumulation clause issues, including Rapid's position on the incorporation of terms and conditions from the 1977 and 1978 Northbrook policies into the National Union policy and specifically Rapid's position on the impact of the a non-cumulation clause or a non-cumulation and prior insurance provision. This is yet another reason to deny the instant motion.

Ultimately, longstanding New York law requires that pro-rata allocation applies unless the contract expressly dictates otherwise. *See Viking Pump* , 27 N.Y.3d at 253; *Consol. Edison v. Allstate Ins. Co.,* 98 N.Y.2d 208, 224, 746 N.Y.S.2d 622 (2002) ; *Roman Catholic Diocese v. Nat'l Union Fire Ins. Co.,* 21 N.Y.3d 139, 153–54, 969 N.Y.S.2d 808 (2013). If Plaintiffs cannot establish that the 1977-79 Policy contains an applicable non-cumulation clause or clauses, then the 1977—1979 Policy is subject to pro-rata allocation under New York law. *Id.*

**II.      Even If Plaintiffs Were Able To Prove That The 1977-79 Policy Contains A Non-Cumulation Clause, There Are Genuine Disputes of Material Fact, Still Subject To Ongoing Discovery, That Prohibit Summary Judgment In Plaintiffs' Favor.**

While Plaintiffs understandably anticipated that National Union would raise a "prematurity" argument, Plaintiffs fail to acknowledge the circumstances of this case and the many precursor issues that are in dispute and still subject and discovery (which was not the

situation in the cases Plaintiffs cite in support of their argument). Here, there are already material

facts as to which there are genuine issues to be tried —and which remain subject to ongoing

discovery —that clearly bear on the applicability of any alleged non-cumulation clause (if any)

in this case. Such issues must be resolved irrespective of a decision concerning the appropriate

allocation methodology, and Plaintiffs have failed to make a prima facie showing that they are

entitled to any of the relief sought by their present motion. *See Contractors Realty Co. v. Ins. Co.*

*of N. Am.*, 469 F. Supp. 1287, 1292 (S.D.N.Y. 1979)( "In order to make out a prima facie case

for recovery, plaintiff must establish that the policy of insurance was issued, that the loss

occurred, and that the loss was an event within the terms of the policy.").

In the case at bar, there is even a factual muddle as to which non-cumulation provision or

provisions applies/y.  Plaintiffs allege that the 1977-79 Policy contains two non-cumulation

provisions, the first of which they contend states as follows:

> It is agreed that if any loss covered hereunder is also covered in whole or in
> part under any other excess policy issued to the insured prior to the
> inception date hereof the limit of liability hereon as stated in Item 2 of the
> Declarations shall be reduced by any amounts due to the insured on account
> of such loss under such prior insurance.

Ex. D to Breene Affirmation at 7-8. Plaintiffs contend that a second non-cumulation provision

provides:

> If the same Occurrence gives rise to Personal Injury, Property
> Damage or Advertising Liability that occurs partly before and
> partly within any one annual period, the limit of liability applicable
> to each Occurrence and any aggregate limit of liability applicable
> to such injury or damage shall be reduced by the amount of all
> payments made by the Company with respect to such Occurrence,
> either under a previous policy or policies issued by the Company
> of which this is a replacement, or under this policy with respect to
> previous annual periods thereof.

Ex. D to the Breene Affirmation at 10.

While National Union disputes the presence of either clause in the 1977-79 Policy, on its face the first alleged clause only comes into play if the "loss is covered in whole or in part under any other [prior] excess policy," and the second alleged clause only comes into play if the same occurrence gives rise to personal injury that occurs partly before and partly within one annual period. Thus, in order for either clause to be implicated, and therefore become relevant to a determination of which type of allocation applies, Plaintiffs must prove that the requirements of the clauses have been met. Yet, Plaintiffs ask this Court to give effect to the clauses for purposes of an "all sums" allocation ruling without putting them to their proofs on whether the conditions of the clauses can actually be satisfied. This is counterintuitive and any "all sums" allocation ruling based on a non-cumulation clause at this stage would accordingly amount to an improper advisory opinion without any of the necessary predicates determinable. *See Pac. Employers Ins. Co.*, No. 1:11-CV-912, 2014 WL 2805312, at *6 (N.D.N.Y. June 20, 2014) ("Though insurance cases sometimes permit a court to issue an opinion about coverage based on contingencies which have not yet come to pass, courts in such situations are still required to 'focus on 'the practical likelihood that the contingencies will occur.''"); *see also Sood v. Rampersaud*, 2013 WL 1681261, at *3 (S.D.N.Y. Apr. 17, 2013).

To further put this in context, Plaintiffs effectively ask this Court to find that they can collect Rapid's "total liability…under a policy in effect during the periods that damage occurred, up to the policy limits." Pl. Mem. at 11. To that end, from the outset of its decision in *Viking Pump,* the Court of Appeals repeatedly acknowledged that it was addressing the limited issues before it in the unique circumstance of certified questions, without the benefit of having adjudicated the case in its entirety. Particularly, the Court of Appeals was not being asked to opine on issues that are generally critical to an insurance coverage dispute, such as trigger of

9

coverage. In fact, the Court of Appeals expressly recognized that "trigger" of coverage is an issue that precedes any allocation determination and in the case of *Viking Pump*, "trigger had already been decided with respect to the policies at issue by the Delaware courts." *Viking Pump*, 27 N.Y.3d at 255 and n.3.

Here, by contrast, it is undisputed that the issue of "trigger"—i.e., what has to happen during the period of the 1977-79 Policy for coverage to be implicated and whether it has happened—has not yet been decided. In presenting their argument, Plaintiffs state that "policyholders typically argue that each insurance company is jointly and severally liable for each continuous injury" (Pl. Mem. at 11) and presumably that is what Plaintiffs intend to argue here. However, New York does <u>not</u> apply a continuous trigger and instead unequivocally employs an "injury-in-fact" test for trigger of coverage. The controlling law in New York on trigger in asbestos-bodily injury cases is *Continental Casualty Company v. Employers Insurance Company*, 60 A.D.3d 128 (1st Dep't 2008), *leave to app. denied*, 13 N.Y.3d 710, 890 N.Y.S.2d 447 (2009) ("*Keasbey*"). In *Keasbey*, the Appellate Division, First Judicial Department, made clear that in an asbestos bodily injury case, the proponent of coverage must establish an "injury" during the policy period and that "injury" in this context is the point when the body's defenses have been overwhelmed. *Id.* at 149. Whether Plaintiffs can prove injury during the policy period(s) with respect to each claimant for which it seeks coverage and can establish trigger in accordance with the relevant policy language and controlling New York law are key issues that remain subject to both fact and expert discovery in this case (and are not the subject of the instant or any pending motion).

In addition to the ongoing dispute regarding whether Plaintiffs will be able to meet their burden to establish that the 1977-1979 Policy is triggered, it is clear already that additional

discovery remains outstanding with respect to the alleged non-cumulation provisions themselves.

In addition to the preliminary issue regarding whether the 1977-79 Policy even contains such a

provision (which alone moots the instant motion), as noted above one of the non-cumulation

clauses that Plaintiffs allege is contained in the 1977-79 Policy provides that the limits of the

policy containing such a clause "**shall be reduced** by any amounts due to the insured on account

of such loss under such prior insurance" (*see* Ex D to Breene Affirmation at 8-9); the other

clause alleged by Plaintiffs provides that the limits of the policy containing such a clause "**shall**

**be reduced** by the amount of all payments made by the Company with respect to such

Occurrence, either under a previous policy or policies issued by the Company of which this is a

replacement, or under this policy with respect to previous annual periods thereof." (*see* Ex. D to

Breene Affirmation at 10).

     While asserting that the clauses apply, Plaintiffs do not cite the Court of Appeals' express

acknowledgment that such provisions have routinely been held to restrict available coverage

limits under successive policies. *See Viking Pump*, 27 N.Y.3d at 259 ("Significantly, we have

enforced non-cumulation clauses in accordance with their plain language . . . despite the limiting

impact that such clauses may have on an insured's recovery (and, by extension, that of an injured

plaintiff).") (internal citations omitted); *Hiraldo v. Allstate Ins. Co.*, 5 N.Y.3d 508, 513 (2005)

(holding that the non-cumulation clause was "fatal" to plaintiffs' claim that the insurer was liable

for up to each policy limit); *Nesmith v. Allstate Ins. Co.*, 103 A.D.3d 190, 193 (4th Dep't 2014)

(holding that "based upon the clear language of the policy at issue," the insurer was not required

"to pay more than its single policy limit"), *aff'd*, 24 N.Y. 3d 520 (2014).

     Indeed, non-cumulations provisions prevent the "stacking" of limits by reducing the

limits under these policies by amounts due under "any other excess policy issued to the Insured."

In turn, by its plain language, this clause can effectively reduce an insurer's liability under a particular policy containing the clause to zero, depending on the amounts due under prior policies. *See, e.g.*, *E.I. du Pont Nemours & Co v. Stonewall Ins. Co.*, No. 99C-12-253 JTV, 2008 WL 7020668, at *5–6 (Del. Super. Ct. Aug 14, 2008) ("The [non-cumulation] clause reduces the limit of Stonewall's liability for losses which are also covered under a prior year's excess policy to the extent of the amounts due under such prior year's excess policy . . . . I conclude that Stonewall's limit of liability is reduced to zero for losses covered both by Stonewall's policies and by prior years' excess policies."), *aff'd*, 996 A.2d 1254 (Del. 2010); *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 149–50 (2d Cir. 2017); *Hopeman Brothers, Inc. v. Continental Cas. Co., et al.*, 307 F. Supp. 3d 433, * (E.D. Va. 2018).

The amount of any requisite reduction of the limits of the 1977-79 Policy is not the subject of the instant motion and National Union reserves all of its rights regarding all arguments pertaining to a potential reduction of limits as necessary should Plaintiffs establish that the National Union Policy contains a non-cumulaton clause, which to date they have not.

To the extent Plaintiffs appear to argue that the alleged non-cumulation clauses "dictate application" of "vertical exhaustion," this aspect of Plaintiffs' motion must likewise be denied for all of the reasons set forth above. Moreover, it must be noted that the Court of Appeals in *Viking Pump* did not rely on any non-cumulation provision in its analysis of whether vertical or horizontal exhaustion was required. Indeed, the exhaustion issue was presented as a distinct second certified question, and the Court's analysis of it focused on "the (specific) language in (those) excess policies tying their attachment only to specific underlying policies in effect during the same policy period as the applicable excess policy, and the absence of any policy language suggesting a contrary intent. . . ." *Viking Pump,* 27 N.Y.3d at 266-67. Whether the 1977-1979

12

Policy is subject to vertical or horizontal exhaustion does not depend on any analysis of any alleged non-cumulation clause, and Plaintiffs' have not articulated any argument as to why the Court should rule in its favor on this issue. National Union respectfully submits that Plaintiffs' motion with respect to the 1977-1979 Policy should be denied.

**III.    Plaintiffs' Motion as to The 1984-85 Policy Fails as a Matter of Law.**

**A.    The 1984-1985 Policy Does Not Contain any Non-Cumulation Provision.**

Plaintiffs cannot escape that *Viking Pump* does not change longstanding New York law that requires pro-rata allocation unless the contract expressly dictates otherwise. *Viking Pump* , 27 N.Y.3d at 253; *Consol. Edison v. Allstate Ins. Co.,* 98 N.Y.2d 208, 224, 746 N.Y.S.2d 622 (2002) ; *Roman Catholic Diocese v. Nat'l Union Fire Ins. Co.,* 21 N.Y.3d 139, 153–54, 969 N.Y.S.2d 808 (2013). Specifically, as discussed above, the finding in *Viking Pump* that all-sums allocation was appropriate was strictly limited to the facts and specific "non-cumulation" of liability provisions contained in the excess policies at issue in that case. *Viking Pump*, 27 N.Y.3d at 264. The *Viking Pump* Court made clear that "the contract language controls the question of allocation." *Id.* at 257. It follows that policies which do not contain prior insurance non cumulation clauses like those assessed in *Viking Pump* remain subject to pro-rata allocation. *See Consol. Edison,* 98 N.Y.2d at 224; *Roman Catholic Diocese,* 21 N.Y.3d at 153–54.

Here, it is undisputed that the 1984-85 National Union Policy does not contain any non-cumulation provision. Plaintiffs themselves argue that *Viking Pump* is the controlling law on this issue and *Viking Pump* clearly dictates that in these circumstances, pro-rata allocation remains the appropriate allocation methodology. In fact, the only instance in which the New York Court of Appeals has held that "all sums" allocation is appropriate under New York law is based on the non-cumulation provisions that are specifically analyzed in *Viking Pump. See Viking Pump* at

13

264; *see also Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, No. 13-CV-4784, 2017 WL 4351523 (S.D.N.Y. Sept. 9, 2017) ("*J.S. Supply*")(holding that when a policy does not include a non-cumulation clause, pro rata allocation applies). Accordingly, *Viking Pump*'s "all sums" allocation ruling is inapplicable to the 1984-85 Policy and National Union is entitled to a ruling that the 1984-1985 Policy is not subject to all sums allocation.[3]

### B.    The "Other Insurance" Clause is Not a Non-Cumulation Clause.

In an effort to evade the clearly controlling New York law, Plaintiffs attempt to argue that the "Other Insurance" clause in the New England Policy underlying the 1984-85 Policy is the equivalent of the non-cumulation clauses addressed by the Court of Appeals in *Viking Pump*. This is meritless, as the court in *Viking Pump* itself stated.

The language Plaintiffs rely on to fabricate a basis for an "all sums" allocation for the 1984-1985 Policy does <u>not</u> address the impact of "an occurrence" or "loss" also covered under a prior policy as is the case in the non-cumulation clauses assessed by the Court of Appeals in *Viking Pump*. Instead, the "Other Insurance" clause contained in the New England policy underlying the 1984-1985 National Union Policy states as follows:

> If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT AND LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with such other insurance.  If collectible insurance under any other

---

[3] By Plaintiffs' own admission, this is case dispositive as to this policy. Indeed, Plaintiffs' counsel represented to this Court that they believed a decision against Rapid on "all sums" allocation would be case dispositive and that if they lose under Viking Pump, "the case is over." *See* Ex. 1 to Affirmation of R. James Bradford in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Allocation ("Bradford Affirmation"), Jan. 10, 2019 Court Hearing Tr. at 5:21-7:20; 41:14-41:20.

policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by the underlying insurance shall not be cumulative.

Ex. E to the Breene Affirmation.

Plaintiffs ignore that the Court of Appeals in *Viking Pump* in fact considered such an "other insurance" provision and expressly held that "'other insurance' clauses 'apply when two or more policies provide coverage during the *same* period, and they serve to prevent multiple recoveries from such policies,' and that such clauses 'have nothing to do' with 'whether any coverage potentially exist[s] at all among certain high-level policies that were in force during *successive years.*'" *In re Viking Pump*, 27 N.Y.3d at 266 (emphasis not added), citing *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223 (N.Y. 2002); *see also Aetna Cas. & Sur. Co.*, 228 A.D.2d 385, 386–87 (N.Y. 1st Dep't 1996) (adjudicating the interpretation of an other insurance clause and holding that such a clause governs "[t]he allocation of the payment of damages among concurrent insurers whose coverages are to be applied to the loss on the same basis."). Contrarily, the non-cumulation clauses at issue in *Viking Pump* either address an "Occurrence" that "gives rise to Personal Injury. . .that occurs partly before and partly within any one annual period" or any "loss covered [under the policy] is also covered in whole or in part under any other excess policy issued to the insured prior to the inception date [of the policy]." *Viking Pump*, 27 N.Y.3d at 264. It is beyond dispute that the "Other Insurance" provision and the

non-cumulation clauses at issue in *Viking Pump* are not synonymous as the 1984-85 National
Union Policy's Other Insurance clause applies to concurrent, not consecutive policies.[4] There is
no basis in law or fact for Plaintiffs to assert otherwise, and National Union respectfully submits
that their motion as to the 1984-1985 Policy must be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on the
Right to Allocation should be denied in its entirety, and National Union is entitled to a ruling that
the 1984-85 Policy is not subject to "all sums" allocation.

---

[4] Plaintiffs also argue that the 1984-85 Policy contains "non-cumulation language" based on the
definition of Personal Injury, which includes "death at any time resulting therefrom". Plaintiffs
immediately concede their own argument. They recognize that *J&S Supply Corp.* held that the
personal injury definition was insufficient to warrant "all sums" allocation. Instead, Plaintiffs
argue that *J&S Supply* was distinguishable "because the policies at issue in that case did not
contain the non-cumulation language present here." Mem. At 10. Distinguishing the clause on
this basis shows that the language "death at any time resulting therefrom" is irrelevant.
Plaintiffs' failure or success on their argument that all sums applies turns on the non-cumulation
clause, not the "death at any time resulting therefrom" language. In fact, the Court had
previously held "the fact that the SMP Policy covers death at any time resulting from injury
during the policy period does not change the fact that it unambiguously provides for pro rata
allocation of liability under New York law." *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*,
No. 13-CV-4784, 2015 WL 13649824 (S.D.N.Y. June 29, 2015). The Court denied the motion
for reconsideration after *Viking Pump*. *See J.S. Supply*, 2017 WL 4351523; *see also New
England Insulation Co. v. Liberty Mut. Ins. Co.*, 83 Mass. App. Ct. 631, 637 (2013)(rejecting the
argument that the words "including death at any time resulting therefrom" in the bodily injury
definition mandates an all sums allocation and applying pro-rata allocation instead).

Dated:  March 29, 2019
New York, New York

Respectfully submitted,


/s/ Eileen T. McCabe
Eileen T. McCabe, Esq.
R. James Bradford, Esq.
Jaimie H. Ginzberg, Esq.
Glenn Greenberg, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York NY  10019
Telephone: (212) 261-8000
Facsimile: (212) 261-8750
eileen.mccabe@mendes.com
james.bradford@mendes.com
jaimie.ginzberg@mendes.com
glenn.greenberg@mendes.com


- And -

David Christian, Esq. (pro hac vice)
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, IL 60602
312-273-1807
dchristian@dca.law
*Attorneys for the Defendant National Union
Fire Insurance Company of Pittsburgh, PA*